UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:10CV-9-JHM

LITTIE DICKERSON and
WADE JONES, Co-Administrators
of the Estate of CARL JONES                                      PLAINTIFFS

VS.

CSX TRANSPORTATION, INC.                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant CSX Transportation, Inc.'s ("CSXT") Motion for Partial Summary Judgment [DN 54]. Also before the Court is Defendant CSX Transportation, Inc.'s Motion to Exclude Testimony of Archie Burnham, Jr. [DN 56] and Plaintiffs' Motion to Exclude Portions of Testimony of Forrest Ballinger [DN 55]. Fully briefed, these matters are ripe for decision.

**I.  BACKGROUND**

This action arises out of a fatal collision involving a CSXT train and a 2008 Chevrolet Impala being driven by Carl Jones. The accident occurred on January 13, 2009, shortly before 7 p.m., as Mr. Jones attempted to cross the railroad tracks at Memphis Junction Road, in Warren County, Kentucky. The Memphis Junction Road crossing is equipped with a post-mounted "RAILROAD CROSSING" (cross bucks) signs and train traffic activated, post-mounted automatic flashing lights. At the time Mr. Jones crossed the train tracks, the post-mounted automatic flashing lights were activated.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

### B. Daubert Standard

Both parties in this case seek to exclude a portion of the other parties expert testimony by alleging in part that their testimony does not meet the standards of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147.

Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

## III. DISCUSSION

Defendant moves for partial summary judgment on two of Plaintiffs' claims: (1) "insufficient or inadequate warning devices" and (2) "negligent operation due to excessive train speed." [Mem., DN 54-1, at 1]. First, as to Plaintiffs' claim based on inadequate warning devices, specifically a lack of gates at the crossing, Defendant contends that any state law claim on this basis is preempted by federal law. Plaintiff argues that a 2007 amendment to the governing federal statute now provides a right for private parties to assert a cause of action under state law for inadequate warning devices. Second, Defendant contends that Plaintiff has failed to assert any facts to contradict Defendant's position that the CSXT train was traveling at below the maximum speed permitted by federal law.

### A. Inadequate Warning Devices

Defendant contends that any state law claim based on inadequate warning devices is preempted by the Federal Railroad Safety Act (FRSA), which seeks "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." Id. § 20103(a). Additionally, the FRSA contains an express preemption provision that states as follows:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

Id. § 20106(a). Following the passage of the FRSA,

> Congress enacted the Highway Safety Act of 1973, § 203, 87 Stat. 283, which, among other things, created the Federal Railway–Highway Crossings Program (Crossings Program), see 23 U.S.C. § 130. That program makes funds available to

> States for the "cost of construction of projects for the elimination of hazards of railway-highway crossings." § 130(a). . . . The Secretary, through the Federal Highway Administration (FHWA), has promulgated several regulations implementing the Crossings Program. One of those regulations, 23 C.F.R. § 646.214(b) (1999), addresses the design of grade crossing improvements. More specifically, §§ 646.214(b)(3) and (4) address the adequacy of warning devices installed under the program.

Norfolk Southern Ry. Co. v. Shanklin, 529 U.S. 344, 348, 120 S. Ct. 1467, 1471, 146 L. Ed. 2d 374 (2000). Pursuant to the preemptive effect of § 20106, the Supreme Court determined,

> for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.

CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 671, 113 S. Ct. 1732, 1741, 123 L. Ed. 2d 387 (1993). The Supreme Court revisited the issue and again concluded that "§§ 646.214(b)(3) and (4) pre-empt state tort claims concerning the adequacy of *all* warning devices installed with the participation of federal funds." Norfolk Southern Ry. Co. v. Shanklin, 529 U.S. 344, 357, 120 S. Ct. 1467, 1476, 146 L. Ed. 2d 374 (2000) (emphasis in original).

Defendant in this action submits uncontested evidence that federal funds were used for the installation of the safety devices located at the Memphis Junction Road crossing. As such, Defendant contends that pursuant to the holdings of both Easterwood and Shanklin, Plaintiffs' state law claim based on inadequate warning devices is preempted. In response, Plaintiffs argue that when Congress amended the preemption section of the FRSA in 2007, they overruled Easterwood and Shanklin. The relevant provision, titled "Clarification Regarding State Law Causes of Action," states as follows:

> (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

49 U.S.C. § 20106(b).

Plaintiffs' contention that this change in § 20106 now permits *all* state-law causes of actions for inadequate warning devices from preemption has failed to find any traction in courts examining this issue. The Tenth Circuit, addressing an almost identical claim as the one found in this case, explained the change as follows:

> Congress amended 49 U.S.C. § 20106 by adding the clarification amendment, making clear that when a party alleges a railway *failed to comply* with a federal standard of care established by regulation or with its own plan, rule, or standard created pursuant to a federal regulation, preemption will not apply. . . . Instead of setting out a federal standard of care under which railroads must operate, [§ 646.214(b)(3) and (4)] establishes a paradigm under which federal funds participate in the installation of warning devices[ ][and] the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection . . . . [T]he regulations in this case take the *final authority to decide* what warning system is needed . . . out of the railroad's and the state's hands. The regulations do not establish a federal standard of care under which [the railroad] must continually act. Thus, [the railroad] could not, as a matter of law, fail to comply with § 646.214(b)(3) and (4).

Henning v. Union Pacific R. Co., 530 F.3d 1206, 1215 (10th Cir. 2008) (citations omitted) (internal quotation marks omitted). The Eighth and Third Circuit have expressly adopted the

Tenth Circuit's interpretation of the amended portion of § 20106 for state law claims based on adequacy of warning devices where federal funds were expended for the installation of the devices. Zimmerman v. Norfolk Southern Corp., 706 F.3d 170, 192 (3d Cir. 2013); Grade v. BNSF Ry. Co., 676 F.3d 680, 686 (8th Cir. 2012).

Because the Court adopts the Tenth Circuit's conclusion in Henning as to § 20106, the Plaintiffs cannot avoid preemption by the FRSA, as determined by the Easterwood and Shanklin, and thus, Plaintiffs' state law claims based on inadequacy of warning devices are dismissed.

**B. Excessive Speed**

Defendant moves for summary judgment on a negligence claim based on an allegation that CSXT operated the train at excessive speeds prior to the collision. According to Defendant, the track located at the Memphis Junction Road is designated as a Class IV track, which permits a maximum speed of 60 mph pursuant 49 C.F.R. § 213.9. Defendant states that the train was traveling at 47 mph prior to colliding with Mr. Jones. Because the train was traveling at below the regulated speed limit, Defendant asserts that any state law claim based on excessive speed is preempted by federal. The Supreme Court firmly settled this issue in holding that "under the FRSA, federal regulations adopted by the Secretary of Transportation preempt respondent's negligence action only insofar as it asserts that petitioner's train was traveling at an excessive speed." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 676, 113 S. Ct. 1732, 1743-44, 123 L. Ed. 2d 387 (1993). Plaintiff fails to respond to this argument or provide any facts to contradict Defendant's assertion that it operated the train below the maximum regulated speed. Therefore, the Court finds for the Defendant on this issue.

**C. Exclusion of Testimony by Expert Archie Burnham, Jr. [DN 56]**

Defendant seeks to exclude portions of testimony expressed by Archie Burnham, Jr. concerning the accident that occurred on January 13, 2009. Specifically, Defendant has identified four areas of concern with respect to the Burnham's opinions and it believes the Court should limit Burnham's testimony accordingly.

**1. Actions of Carl Jones as he approached the crossing and any possible prior actions or interpretations of Jones on other occasions.**

Defendant moves to prohibit Burnham from speculating as to why Carl Jones proceeded over the tracks rather than stopping. Burnham states that there had to be some reason because there is no evidence that Jones had a "self-destructive intent." Despite acknowledging that "[t]his appears to be an accident which an error was made in judging whether it was safe to proceed through the lights," [Burnham Dep., DN 54-6, at 36] Burnham tries to attribute that error in judgment to a failure on the part of CSXT.

The primary objection in this area has to do with Burnham's theory that "false activation" causes motorists to conclude that no train is approaching. There is a 7 track switch yard to the north of the crossing and when trains approach the crossing but stop short of it at the switching yard, the lights sometimes activate at the crossing as if a train is approaching. Burnham calls this a false activation. He acknowledges that this is how the devices are designed and has no opinion to offer that there is any defect in, or lack of maintenance to, the control devices. Burnham calls it an operational problem in that "it leaves the motorist with a false impression that the crossing is going to be occupied because the lights are flashing, and it leaves it on them to determine whether it's because the train has stopped and moving back the other direction or whether it's, in fact, a live activation for the train to approach through the crossing." [Burnham Dep., DN 54-6, at 49].

It is important to note that the lights were flashing on the night in question and there was nothing false about the fact a train was approaching the crossing at the time of the accident. The Court agrees with Burnham that whenever the lights are flashing, it is incumbent upon the driver to ascertain whether the crossing is occupied. The jury hardly needs an expert to tell them that. But Burnham seems to suggest that since there are so many false activations at that crossing, motorists would, over time, come to conclude that no train was coming even if the lights were flashing. Burnham's opinion on this is sheer speculation. He has no expertise in which to determine whether that is the case. His theory has not be tested or subject to peer review. It is made simply to support this litigation. There is no evidence that Jones crossed into the path of the oncoming train because he had, over time, concluded the flashing signal lights really meant that the crossing was not occupied. Burnham may testify about certain physical attributes of the Memphis Junction Road crossing but evidence regarding his "false activation" theory shall be excluded.

**2. Maintenance, functional operation, or malfunction of the signal system**

Defendant seeks to preclude Burnham's testimony in this area. From a reading of his testimony, it does not appear that Burnham has any opinions to offer in this regard other than the fact that the warning signals sometimes falsely indicate that a train is headed towards the tracks. [Burnham Dep., DN 64-6, at 48]. For the reasons stated above, that evidence shall be excluded.

**3. Train Horn**

Defendant argues that Burnham cannot testify about the average decibel level inside vehicles in relation to an individual's ability to hear a train horn because Burnham solely relies on studies from the 1970s and he is not an audiologist. As to Defendant's argument that Burnham failed to personally test the train horn in this case, the area, or the vehicle involved in

the incident, the Court starts with the position that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert, 509 U.S. at 592. Moreover, Burnham is not required to have specialized knowledge from testing of the train horn if he is simply discussing generally the distance in which a train horn may be heard. His testimony does not reflect that he is specifically opining about the ability for Jones to hear the horn prior to the accident. Burnham's conclusions as to decibel levels appear to be grounded in literature on the subject, and therefore, there appears to be no reason at this time to exclude him from testifying about such.

### 4. WBAPS, Web Accident Prediction System

Burnham intends to testify that the Web Accident Prediction System ("WBAPS") indicates that the Memphis Junction Road Crossing is ranked the ninth worst crossing in Kentucky. Defendant contends that 23 U.S.C. § 409 prohibits the use of any material obtained from the WBAPS system. In response Plaintiffs argue that experts may rely on material that may not normally be admissible pursuant to Federal Rule of Evidence 703.

Section 409 provides as follows:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C.A. § 409. There is no dispute by the parties that the WBAPS system is maintained by the Federal Railroad Administration, and thus, information obtained from that system would be subject to 23 U.S.C.A. § 409. The Plaintiffs fail to argue against the application of the statute

and simply contend that Federal Rule of Evidence 703 permits the use of this testimony. Federal Rule of Evidence 703 does not trump a specific federal statute prohibiting the use of certain information in litigation. Furthermore, § 409 is a nondiscretionary statute in respect to the Federal Rules of Evidence. See Dugle ex rel. Dugle v. Norfolk Southern R. Co., 2010 WL 1948214, *3 (E.D. Ky. May 13, 2010) ("Under the plain language of [§ 409], this Court is prohibited from permitting any party to use the protected information as evidence. The statute leaves no discretion on that issue to either the parties or this Court."). Therefore, Burnham may not testify concerning the safety ranking of Memphis Junction nor discuss any data provided by the WBAPS system.

**1. Exclusion of Testimony by Expert Forrest Ballinger [DN 64]**

Plaintiffs' motion indicates that they seek to prevent Ballinger from testifying about "the adequacy of safety devices at the subject railroad crossing since he has admitted in his deposition that he is not qualified . . ." [Mot. to Exclude Portions of Test. of Ballinger, DN 55, at 1]. Plaintiffs base this motion on Defendant's Fed. R. Civ. P. 26(a)(4)(2)(A) disclosure for Ballinger which indicated that he would testify concerning the regulatory standards of the warning devices in place on January 13, 2009. Based on Defendant's response to Plaintiffs' motion, it agrees that Ballinger cannot testify concerning the adequacy of the safety devices in place at the Memphis Junction Road crossing as that subject is specifically preempted by federal law and a matter for the Court to determine. In fact, Ballinger's testimony reflects the fact that he does not plan on testifying about this subject. Therefore, Plaintiff's motion to exclude this part of the testimony is moot.

## IV.  CONCLUSION

For the foregoing reasons, Defendant CSX Transportation, Inc.'s ("CSXT") Motion for Partial Summary Judgment [DN 54] is **GRANTED**.

Defendant CSX Transportation, Inc.'s Motion to Exclude Testimony of Archie Burnham, Jr. [DN 56] is **GRANTED in part** and **DENIED in part**.

Plaintiffs' Motion to Exclude Portions of Testimony of Forrest Ballinger [DN 55] is **DENIED** as **MOOT**.

                                            **Joseph H. McKinley, Jr., Chief Judge**
                                                **United States District Court**

February 10, 2014

cc: counsel of record